Filed 8/6/24  P. v. Toledo CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B328177 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA058177) |
| v. | |
| ROBERTO JOSE TOLEDO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John A. Torribio, Judge.  Affirmed.

Sabrina R. Damast, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.

_____

Roberto Jose Toledo pleaded guilty to a drug offense in 2000.  More than twenty years later, he moved to withdraw his plea, arguing he would not have made it had he meaningfully understood its adverse immigration consequences.  The trial court denied Toledo's motion.  We affirm because Toledo failed to demonstrate prejudice.  Undesignated statutory citations are to the Penal Code.

I

In February 2000, an informant set up a drug deal in an undercover operation.  Detectives watched Toledo and others take part in the deal, arrested them, and found a "large quantity" of cocaine at the scene.  Toledo has not disputed these facts.

A March 2000 information charged Toledo and three co-defendants with two counts:  possessing a controlled substance (cocaine) in violation of Health and Safety Code section 11350, subdivision (a), and selling/transporting/offering to sell a controlled substance in violation of Health and Safety Code section 11352, subdivision (a).  The information alleged Toledo had a prior felony conviction from October 1999 for violating section 245, subdivision (c) (assaulting a peace officer with a deadly weapon).

In April 2000, Toledo pleaded guilty to the first count.  The second count was dismissed as part of the plea agreement.

Toledo's plea form shows the maximum punishment for the first count, plus the strike enhancement, was six years.  The form shows Toledo agreed to a term of 32 months in state prison, which was the low term of 16 months doubled due to the strike.  Toledo initialed a box on the form saying:  "I understand that if I am not a citizen of the United States, the conviction for the offense charged ~~may~~ have the consequences of deportation,

exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Above the crossed out word "may" was the handwritten word "will." Toledo signed and dated the form under a paragraph saying he had initialed the boxes on the form and had discussed them with his attorney, he understood the rights listed, and he waived them to enter his plea.

Toledo's attorney also signed the plea form saying he had explained these rights to Toledo and concurred in his client's decision to waive them.

The plea hearing transcript shows Toledo entered his plea in court with his three co-defendants. Each defendant had separate counsel and the assistance of a Spanish language interpreter. The court asked each defendant to confirm that he had had the opportunity to go over the plea form with his attorney, line by line; that he read and understood the form; and that he signed and initialed it, knowing he was giving up constitutional rights. Toledo confirmed.

The prosecutor warned the defendants if they were not citizens, "you will be deported, denied citizenship, denied re-entry into this country as a result of your plea." The prosecutor asked if anyone had questions, and a co-defendant asked a question related to deportation. Toledo had no questions.

Toledo entered a guilty plea and admitted the prior strike conviction, which resulted from an earlier plea (in case No. VA055574). Counsel stipulated to a factual basis for the current plea. The trial court accepted this plea and found counsel had "fully advised" Toledo of the possible consequences of the plea. The court sentenced Toledo to the agreed 32 months in prison.

More than two decades later, in September 2022, Toledo filed a motion to withdraw his plea under section 1473.7. Apparently, Toledo also separately moved for this relief in his other case. This other motion is not in our record.

Toledo's section 1473.7 motion in this case argued his counsel did not advise him properly regarding the adverse immigration consequences of both his plea and his strike admission, and Toledo did not meaningfully understand these consequences. The motion explained that admitting the strike allegation made Toledo's conviction qualify as an aggravated felony for immigration purposes. It appears Toledo discovered this after he received an Intent to Deny his green card petition in 2019.

Toledo supported his motion with his declaration. This declaration is brief: one page and a few lines. Toledo declares a Spanish language interpreter had assisted him and had translated the plea form and the proceedings in 2000. Toledo maintains that, when completing the plea form, he lacked information regarding admitting his prior conviction. Regarding immigration issues, Toledo declares: "My defense attorney did not ask me about my immigration status." "I did not understand that entering a guilty plea to Health & Safety Code section 11350(a) and admitting the prior conviction would make me deportable." "Had I known that this plea agreement would cause me to be deported, I would not have entered the plea of guilty, would have sought an immigration neutral resolution, moved to strike the prior conviction or taken the case to trial." Toledo says he came to the United States when he was 19 and has lived here for the past 30 years. Then he discusses his life here *after* his plea: he married a U.S. citizen and had three kids, one of whom

4

earned college scholarships and all of whom are U.S. citizens. Toledo also discusses his current (and recent) employment and his role as financial provider for his family. Toledo's declaration says nothing about his home country.

Toledo's immigration attorney also provided a brief declaration. The attorney states "Mr. Jose Norberto Toledo Casillas" has been in the United States since 1993 and currently is working on becoming a legal permanent resident; a conviction like Toledo's would hinder his immigration case because the charge is categorized as a Crime Involving Moral Turpitude and an Aggravated Felony, due to the 32-month prison sentence; and the conviction would bar him from adjusting his status to become a Legal Permanent Resident. The attorney discusses Toledo's eligibility to have his conviction vacated and possible consequences of vacating—and not vacating—the conviction. The attorney does not identify any immigration-neutral alternative to which Toledo could have pleaded.

Various documents are attached to the attorney's declaration, including an immigration document for Toledo, a naturalization document for his father, Toledo's license showing he married in 2017, and his wife's and children's birth certificates. One document appears to show Toledo was born in Mexico.

The prosecution orally opposed Toledo's motion at a hearing in November 2022, which addressed both of Toledo's cases. Toledo was present at the hearing with counsel and an interpreter. Both sides argued; neither side called witnesses.

In response to prosecution concessions, the trial court set aside Toledo's plea in his other case (VA055574) and dismissed

the case. The court emphasized the plea was valid at the time it was made, however.

In this case, the court struck the strike prior allegation and reduced Toledo's drug conviction to a misdemeanor under section 1170.18, subdivision (g) (referred to as Proposition 47). The court then denied the section 1473.7 motion. It determined Toledo's plea continued to be valid, as Toledo had been "adequately advised of the immigration consequences at the time of the plea based on the plea form and the plea transcript."

Toledo's counsel asked the court to consider "allowing Mr. Toledo to be sentenced to a deferred entry of judgment on the 11350 nunc pro tunc" and otherwise phrased the relief sought as "diversion under P.C. 1000 on that 11350." The court denied the request: "[Y]ou're asking me to grant a prejudgment relief on a case that's final."

Toledo appealed.

## II

Toledo had the burden of establishing his entitlement to relief by a preponderance of the evidence. (See § 1473.7, subd. (e)(1); *People v. Espinoza* (2023) 14 Cal.5th 311, 316 (*Espinoza*).) He did not carry this burden.

Specifically, Toledo's motion did not show prejudice, which ends the matter. (See § 1473.7, subd. (a)(1); see also *People v. Vivar* (2021) 11 Cal.5th 510, 528 (*Vivar*) [petitioners seeking to withdraw a plea under this provision must show error is prejudicial].)

We independently review the section 1473.7 ruling, according no deference to the trial court's factual findings, which arose from a cold record. (*Espinoza*, *supra*, 14 Cal.5th at pp. 319–320; *Vivar*, *supra*, 11 Cal.5th at pp. 528 & 534.)

6

To establish prejudice, petitioners like Toledo must demonstrate it is reasonably probable they would have rejected a plea if they correctly had understood the actual or potential immigration consequences, and they must corroborate such assertions with objective evidence. (*Espinoza*, *supra*, 14 Cal.5th at pp. 316 & 321.) In assessing prejudice, we consider the totality of the circumstances, including the petitioner's ties to the United States, the importance he placed on avoiding deportation, his priorities in seeking a plea bargain, whether he had reason to believe an immigration-neutral disposition was possible, his probability of getting a more favorable outcome had he rejected the plea, and the difference between the bargained-for term and the likely term after trial. (*Id.* at p. 320.) Also relevant are the petitioner's criminal record, the strength of the prosecution's case, the seriousness of the charges or whether the crimes involved sophistication, the district attorney's charging policies concerning immigration consequences, and the existence of similar offenses without these consequences. (*Id.* at p. 323.)

Both before and after *Espinoza*, analyzing prejudice has required a case-by-case examination of the record, but no specific kind of evidence. (*See Espinoza*, *supra*, 14 Cal.5th at pp. 321 & 325.)

Little in Toledo's declaration—and in his appellate briefing—concerns prejudice. As noted above, the declaration states: "Had I known that this plea agreement would cause me to be deported, I would not have entered the plea of guilty, would have sought an immigration neutral resolution, moved to strike the prior conviction or taken the case to trial."

Objective evidence supporting this statement is lacking.

7

Nothing in the record suggests immigration consequences mattered to Toledo at the time of his plea. The only thing Toledo tells us about his life *before this plea* is that he came to the United States when he was 19 (in 1993), roughly seven years before pleading guilty. Toledo does not discuss family members, close friends, employment, community involvement, or any other connection to the United States as of his plea. (Nor does Toledo identify his home country or say anything about his connections to that country then.)

After the prosecution's response brief raised Toledo's lack of pre-plea community ties, Toledo did not return to this topic in his reply brief.

Toledo's lack of significant ties to the United States at the time of his plea distinguishes this case from *Espinoza*, where our high court recognized a defendant's return to his community after a plea can corroborate the significance of strong community ties established before the plea. (See *Espinoza*, *supra*, 14 Cal.5th at pp. 322–323 [outlining the defendant's deep, pre-plea ties to California from 23 years of residence there, which supported his statement that " '[e]verything important in his life' at the time he entered his plea 'was in the United States' "]; see also *Vivar*, *supra*, 11 Cal.5th at pp. 530–531 [prejudicial error shown where Vivar repeatedly emphasized immigration interests and, "[a]t the time of his plea, he had two children, two grandchildren, and a wife, all of whom are citizens and all of whom resided in California"].)

Apart from claiming he had sufficient ties to this country, Toledo argues prejudice exists because he had a substantial likelihood of getting an immigration-neutral plea instead of the problematic plea he made.

8

Toledo's motion talks about exploring alternative plea agreements or taking the case to trial. But neither the motion nor the supporting declarations point to any possible immigration-safe options available to Toledo at the time of his plea. (Cf. *Espinoza*, *supra*, 14 Cal.5th at pp. 321 & 324 [immigration law expert explained Espinosa could have pleaded to alternative, immigration-safe dispositions and identified these offenses].)

On appeal, Toledo speculates he "may have been able" to get pretrial diversion instead of the plea deal he reached in 2000. Toledo's section 245 conviction from 1999 makes this doubtful. This conviction was recent, seemingly violent, and valid in 2000—facts that Toledo ignores. And the diversion statute Toledo identified excludes from eligibility any defendant with a prior felony conviction within five years of the charged offense. (See § 1000, subd. (a)(4) & (b).) (Toledo also had a burglary conviction from 1994.)

Toledo points to nothing suggesting he had reason in 2000 to believe the prosecution would have entertained diversion instead of a conviction plus prison time, or would have dispensed with his strike conviction. No expert or other witness identified these as possible alternatives back then. No evidence provides a window into the prosecution's charging policies back then.

Moreover, nothing suggests the prosecution had proof problems afflicting its drug case against Toledo. Detectives apparently observed Toledo's direct involvement in this coordinated crime. There was no reason to believe Toledo stood a chance of acquittal had he gone to trial—where he faced the same adverse immigration consequences he now protests.

On the other hand, Toledo's plea deal was favorable:  it gave him the low term on one count and the dismissal of his other count.  This favorable plea suggests a priority of Toledo's at the time was avoiding considerable prison time.

In short, assuming Toledo erred in entering his plea, he failed to establish the error was prejudicial under section 1473.7. (See *Espinoza*, *supra*, 14 Cal.5th at p. 316; see also *id.* at p. 323 [contrasting and citing with approval *People v. Bravo* (2021) 69 Cal.App.5th 1063]; *Bravo*, at pp. 1076–1077 [no prejudice where the defendant did not address the consequences of rejecting the plea or the probability of an alternate disposition].)

## DISPOSITION

We affirm the order denying Toledo's motion.

WILEY, J.

We concur:

STRATTON, P. J.

VIRAMONTES, J.

10